UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PREMIER GAMING TRAILERS, LLC,

    Plaintiff,

v.                                         Case No. 8:16-cv-3378-T-33TGW

LUNA DIVERSIFIED ENTERPRISES,
INC.,

    Defendant.
_____/

## ORDER

This matter comes before the Court pursuant to a non-jury trial that was held on April 11, 2018. (Docs. ## 65, 68). The Court previously had granted summary judgment in favor of Defendant Luna Diversified Enterprises, Inc., on Counts I and III of Plaintiff Premier Gaming Trailers, LLC's Complaint. (Doc. # 55). The April 11, 2018, trial was on the remaining two counts of the Complaint, Counts II and IV, which assert unjust enrichment and conversion claims.

After considering all the testimony and evidence presented at trial, including the live witnesses and the witness submitted by deposition, and reviewing the written evidence presented, the Court announced its findings. (Doc. # 68 at 138-143). The Court now renders those findings into this final Order and Verdict, ruling in Luna's favor on the two remaining counts.

I.  **Unjust Enrichment**

In Count II, Premier Gaming alleges that Luna was unjustly enriched by using Premier Gaming's bid information in its contract with the Army. (Doc. # 1 at 5-6). Under Florida law, the elements of a cause of action for unjust enrichment are: "1) plaintiff has conferred a benefit on the defendant who has knowledge thereof; 2) defendant voluntarily accepts and retains the benefit conferred; and 3) the circumstances are such that it would be inequitable for the defendant to retain  the benefit without paying the value thereof to the plaintiff." Lewis v. Seneff, 654 F. Supp. 2d 1349, 1369 (M.D. Fla. 2009).

The Court finds that, under the circumstances, it was not inequitable for Luna to retain the benefit of the bid information without compensation to Premier Gaming. The only portion of the bid information that remained in the final contract with the Army was the price, calculated in part with Premier Gaming's cost estimates. The design elements provided by Premier Gaming deviated from Army specifications and were not used by Luna in its final contract. (Doc. # 68 at 37-38, 62, 71-73). None of Premier Gaming's bid information, except for price, was accepted by the Army or used in production under the contract. Compare (Docs. ## 66-2a; 66-2b), with (Docs. ## 66-17a; 66-17b; 66-25b). Thus, the Army was not induced to select Luna's bid because of Premier Gaming's bid

information – instead, most of the bid information was not even retained.

The final contract between Luna and the Army is longer and more detailed than the information provided by Premier Gaming in its preparation for the initial bid. The bid information upon which this claim is based consists of four pages. (Docs. ## 66-2a; 66-2b). In contrast, the final Army contract contains 32 pages of detail. (Docs. ## 66-17a; 66-17b; 66-25b). Furthermore, no costs, outside of a few hours of Lidan Bekhor's time, were incurred by Premier Gaming in preparing the bid information. Bekhor, Premier Gaming's owner, admitted he expended no money in putting together the bid information. (Doc. # 68 at 123-126). Although Bekhor testified that he called various vendors and suppliers of metal and electrical parts for pricing, (Id. at 81), he was unable to name one person contacted. (Id. at 125). Not one written item, note, ledger, or scrap of paper could be produced as evidence of Bekhor's effort. (Id. at 123-125).

While Marcos Morales, a Luna Employee, was in contact with Premier Gaming and involved in assembling the bid, he was unaware that Jason Curry, Luna's operations manager, had already prepared an alternate bid without Premier Gaming's bid information. (Id. at 41-45). Indeed, at that time, Curry was under the impression that the bid proposal he drafted was submitted to, and was the one selected by, the Army. (Id. at 46). Curry did not know that Morales

had been preparing a separate bid with Premier Gaming in mind as the supplier. (Id.). Thus, even if Luna did not have Premier Gaming's price quote, it still would have been able to submit a bid to the Army. (Id. at 29-30).

Despite believing it would be the supplier if Luna were awarded the Army bid, Premier Gaming never attempted to reduce such understanding to a more formal agreement. (Id. at 36). Nor did Premier Gaming seek to contact Luna's owner, Alma Gina, to confirm its understanding. (Id. at 14-15, 31, 127). Bekhor testified that there was no written contract of any kind. (Bekhor Dep. Doc. # 46-2 at 32-32, 56, 96).

Both Luna and Premier Gaming were unaware as to whether Premier Gaming was eligible to participate in the contract with the Army, had it been awarded. (Doc. # 68 at 59-60; 116-117). Bekhor did not read the portions of the Army's solicitation concerning eligibility requirements for the set aside contract. (Id. at 113). Even if Premier Gaming had been eligible, Curry testified concerning the financial infeasibility of the kiosk frames being manufactured in Florida by Premier Gaming, stating, "the logistical costs of that would be insurmountable." (Id. at 66).

Curry testified that he has handled hundreds of federal contract bids or solicitations. (Id. at 58). Before this lawsuit, Premier Gaming had not been previously involved in a federal bid

that had come to fruition. (Id. at 110-111). At trial, Bekhor confirmed that he could not recall any other company Premier Gaming had dealt with or partnered with on a federal contract prior to this dispute. (Id. at 112). Bekhor was unable to name the federal form, SF1449, which is the standard solicitation/contract/order form for commercial items used by the Federal Government.[1] (Id. at 117). Until this lawsuit, Bekhor testified that he had not seen an SF1449. (Id.).

While it is unfortunate that Premier Gaming was not chosen as a supplier of the gaming kiosks, it was not inequitable for Luna to select different subcontractors or vendors for the manufacturing of the kiosks. Therefore, the Court rules for Luna on the unjust enrichment claim.

## II. Conversion

Count IV of the Complaint alleges that Luna committed the tort of conversion by converting both Premier Gaming's "proprietary Bid Information and Contract Award." (Doc # 1 at ¶ 45-48). "The essence of the tort of conversion is the exercise of wrongful dominion or control over property to the detriment of the rights of the actual owner." DePrince v. Starboard Cruise Services, Inc., 163 So. 3d. 586, 597 (Fla. 3d DCA 2015)(citing Seymour v.

---

[1] See Form: SF1449, U.S. General Services Administration, www.gsa.gov/forms-library/solicitationcontractororder-commerical-items. This routine federal contracting form is found at Exhibits Pl. 17b, and Pl.25b.

5

Adams, 638 So. 2d. 1044, 1046-47 (Fla. 5th DCA 1994)). "It is well settled that a conversion is an unauthorized act which deprives another of its property permanently or for an indefinite time." Senfeld v. Bank of Nova Scotia Trading Co. (Cayman) Ltd., 450 So. 2d. 1157, 1160-61 (Fla. 3d DCA 1984).

Furthermore, "it is not necessary for a person to deprive another of exclusive possession of their property in order to be liable for conversion." Total Mktg. Technologies, Inc., v. Angel Medflight Worldwide Air Ambulance Services, LLC, No. 8:10-cv-2608-T-33TBM, 2012 WL 33150 at *4 (M.D. Fla. Jan. 6, 2012). The claim for conversion is appropriate "even if the specific property converted has no cash value." Id. at 3-4. And "a claim for a conversion may extend to the wrongful taking of intangible business interests." Id. at 3.

Because Luna's submission of its bid to the Army was not an unauthorized act or exercise of wrongful dominion or control, the Court finds for Luna on Count IV. Luna employee, Morales, submitted the bid to the Army with Premier Gaming's consent. (Doc. # 68 at 85); see also (Docs. ## 66-12; 66-13; 66-27 at 27-29). "There can be no conversion where a person consents to the possession by another of the assets allegedly converted." Comprehensive Care Corp. v. Katzman, No. 8:10-cv-942-T-27TGW, 2011 WL 2960916 at *8 (M.D. Fla. July 21, 2011)(citing In re: General Plastics Corp., 184 B.R. 996, 1004 (Bankr. S.D. Fla. 1995)).

6

Luna did not continue to exercise wrongful dominion or control over the bid information after the bid was submitted. Importantly, the final contract specifications with the Army did not retain any of the design deviations presented in Premier Gaming's bid information. (Doc. # 68 at 71-72); compare (Docs. ## 66-2a; 66-2b), with (Doc. #66-25b). The final contract kept only the price from Luna's bid, which included Premier Gaming's rough price per unit calculation, as one part of the calculation. Premier Gaming's design deviations did not align with the Army specifications, (Doc. # 68 at 127-132), and thus, it is not surprising that the design was not used by the Army to award the contract. Bekhor agreed at trial that he had tried to look at the Army's specifications but "got confused and stopped." (Id. at 132). For these reasons, Luna did not exercise wrongful dominion or control over Premier Gaming's bid information.

Accordingly, it is

**ORDERED**, **ADJUGED**, and **DECREED**:

(1) The Court finds in favor of Defendant Luna Diversified Enterprises, Inc., on all remaining counts.

(2) The Clerk is directed to enter judgment in favor of Defendant and thereafter close this case.

**DONE AND ORDERED** in Chambers in Tampa, Florida, this 16th day of May, 2018.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE