UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PREMIER GAMING TRAILERS, LLC,

    Plaintiff,

v.                                Case No.: 8:16-cv-3378-T-33TGW

LUNA DIVERSIFIED ENTERPRISES,
INC.,

    Defendant.
_____/

## **ORDER**

This matter comes before the Court pursuant to Plaintiff Premier Gaming Trailers, LLC's Motion for New Trial (Doc. # 75), filed on June 13, 2018. Defendant Luna Diversified Enterprises, Inc. responded on June 25, 2018. (Doc. # 77). For the reasons that follow, the Motion is denied.

**I.**   **Background**

As the Court is writing primarily for the benefit of the parties, a detailed recital of the case's history and the Complaint's allegations is unnecessary at this juncture. Suffice it to say that a bench trial was held on April 11, 2018, on Premier Gaming's claims for unjust enrichment (Count II) and conversion (Count IV) related to Luna's failure to use Premier Gaming as the manufacturer of kiosks for a U.S. Army contract. (Doc. ## 65, 68).

1

At the end of that bench trial, the Court announced its ruling in favor of Luna on all counts. (Doc. # 68 at 138-144). The Court directed Luna to submit a proposed order summarizing the Court's findings. Subsequently, the Court entered a written Order encapsulating its ruling on May 16, 2018. (Doc. # 70).

On June 13, 2018, Premier Gaming filed the instant Motion for New Trial. (Doc. # 75). Luna has responded (Doc. # 77), and the Motion is ripe for review.

## II. Legal Standard

Under Federal Rule of Civil Procedure 59(a), "[t]he court may, on motion, grant a new trial on all or some of the issues — and to any party — as follows . . . after a nonjury trial, for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court." Fed. R. Civ. P. 59(a)(1)(B). Furthermore, "[a]fter a nonjury trial, the court may, on motion for a new trial, open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new ones, and direct the entry of a new judgment." Fed. R. Civ. P. 59(a)(2).

"In a nonjury case, a motion for a new trial should be based upon a manifest error of law or mistake of fact and should only [be] granted for substantial reasons." Tampa Port

2

Auth. v. M/V Duchess, 65 F. Supp. 2d 1303, 1305 (M.D. Fla. 1998)(citation and internal quotation marks omitted). "An error which does not affect the substantial rights of the parties does not constitute grounds for a new trial." Id.

**III. Analysis**

In its Motion, Premier Gaming "requests that this Court enter an order granting a new trial, amend its finding of fact and conclusions of law, or direct entry of a judgment in favor of [Premier Gaming] on Count II of the Complaint." (Doc. # 75 at 7). Therefore, Premier Gaming is only challenging the Court's ruling in favor of Luna on Count II, the unjust enrichment claim.

First, Premier Gaming complains that it was unable to give a closing statement at the bench trial, although the Court said it would allow closing statements. (Id. at 3). The Court notes that Premier Gaming did not object at trial, at which time the Court could have allowed Premier Gaming to give a short closing statement. Regardless, Premier Gaming does not actually raise the lack of a closing statement as a basis for granting a new trial or amending the judgment. Instead, Premier Gaming asks that its Motion serve as its "de facto closing statement," raising arguments Premier Gaming asserts it would have addressed in closing at trial. (Id.).

The Motion raises three arguments — all concerning the evidence of the alternate bid prepared by Luna's Jason Curry for the Army contract. (Id. at 4-7). Premier Gaming argues there was insufficient evidence that Curry prepared an alternate second bid for the Army contract or that that bid would have been selected by the Army. (Id. at 4-5). Finally, Premier Gaming argues the second bid would have failed to produce a profit. (Id. at 5-7). The Court will address each argument in turn.

### A. **Existence of the Second Bid**

According to Premier Gaming, there was insufficient evidence that Curry prepared an alternate bid for the Army contract because the "only evidence presented during the Trial relating to the Purported Second Bid was testimony from Curry." (Id. at 4). It notes that "no documents were produced evidencing the existence of the Purported Second bid, despite testimony that the same existed." (Id.). So, Premier Gaming reasons, "it was error for this Court to find that the Purported Second Bid existed and that the existence of the same is dipositive as to whether a benefit was conferred upon Luna by [Premier Gaming]." (Id.).

The Court rejects this argument for two reasons. As an initial matter, the existence of the alternate bid created by

4

Curry was not dispositive of the Court's ruling. Under Florida law, the elements of a cause of action for unjust enrichment are: "1) plaintiff has conferred a benefit on the defendant who has knowledge thereof; 2) defendant voluntarily accepts and retains the benefit conferred; and 3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff." Lewis v. Seneff, 654 F. Supp. 2d 1349, 1369 (M.D. Fla. 2009). The Court's ruling did not hinge upon a finding that Premier Gaming did not confer a benefit on Luna. Rather, as the post-trial Order states, the Court focused on the third element and found that "it was not inequitable for Luna to retain the benefit of the bid information without compensation to Premier Gaming." (Doc. # 70 at 2).

True, the Court found that the existence of Curry's alternate bid undermined Premier Gaming's unjust enrichment claim. (Id. at 3). But the Court held that it was not inequitable for Luna to retain any benefit Premier Gaming might have conferred upon it for other reasons as well. Specifically, the Court emphasized that the "only portion of the bid information that remained in the final contract with the Army was the price, calculated in part with Premier Gaming's cost estimates." (Id. at 2). And the Court noted

5

that "[t]he design elements provided by Premier Gaming deviated from Army specifications and were not used by Luna in its final contract." (Id.). Premier Gaming incurred no costs, besides a few hours of its owner Lidan Bekhor's time, in preparing the bid information it supplied to Luna's Marcos Morales. (Id. at 3).

Furthermore, Bekhor, "never attempted to reduce such understanding [that Premier Gaming would be the sole supplier of the kiosks to Luna] to a more formal agreement" and never "contact[ed] Luna's owner, Alma Gina, to confirm [this] understanding." (Id. at 4). Finally, Curry testified that, even if Premier Gaming had been eligible under the federal bidding regulations to manufacture the kiosks, "the logistical costs of [having Premier Gaming ship the finished kiosks from Tampa, Florida to Luna in California] would be insurmountable." (Id. at 4). For these multiple reasons, the Court concluded: "While it is unfortunate that Premier Gaming was not chosen as a supplier of the gaming kiosks, it was not inequitable for Luna to select different subcontractors or vendors for the manufacturing of the kiosks." (Id. at 5).

Second, there was evidence presented at trial to support the existence of the alternate bid — Curry's unimpeached testimony. Premier Gaming questioned Curry about the

6

alternate bid. (Doc. # 68 at 41:6-42:25, 44:11-18, 45:22-46:4, 47:8-48:25). Curry testified he had prepared a quote for the kiosk bid solicitation, including a price estimate he submitted to Luna's sales representative, Carlos Colon. (Id.). He explained that he "created a bill of materials, an Excel spreadsheet, that was uploaded into [Luna's] CRM self logics." (Id. at 44:11-15). In his bill of materials, Curry "included all costs and data associated with what Luna's cost would be to fabricate the units, as well as ship and deliver them to the customer" and "labor costs." (Id. at 47:8-13). Curry had thought the bid he prepared would be submitted to the Army, but the bid prepared by Luna's Morales with Premier Gaming was submitted instead. (Id. at 45:2-46:17). Curry's testimony never wavered and the Court credited Curry's testimony, which was consistent with Curry's prior deposition testimony.

As Curry testified, Premier Gaming did not request any of Curry's documentation concerning the alternate bid during discovery. (Id. at 44:16-18). While Luna did not present these documents Curry had prepared, Luna was not required to present such evidence. As Luna notes, Premier Gaming carried the burden of proof for its claim. (Doc. # 77 at 4). The credible testimony of Curry was sufficient to establish that Curry had

prepared an alternate bid for the Army contract, and Premier Gaming failed to impeach that testimony. Therefore, Premier Gaming's argument about the existence of Curry's alternate bid fails.

**B.     Whether the Second Bid Could Have Won**

Next, Premier Gaming argues that "[a]ny determination by this Court that the alleged existence of the Purported Second Bid means that no benefit was conferred on Luna by [Premier Gaming] is pure speculation." (Doc. # 75 at 5). Premier Gaming emphasizes that "there was no evidence that a bid containing Curry's cost estimates would have been prepared on time prior to the Army's deadline" or "that Curry could have provided the requisite drawings to the Army as requested that were in fact provided by [Premier Gaming] in order to obtain the Contract." (Id.).

Again, the Court's ruling on the unjust enrichment claim did not depend upon a finding that Premier Gaming did not confer any benefit on Luna. Regardless of whether a benefit was conferred, the Court held that it was not inequitable for Luna to retain any such benefit. (Doc. # 70 at 2). Furthermore, Curry testified that he submitted his quote to Colon on time, supporting that a bid using Curry's quote could

have been submitted in time. (Doc. # 68 at 45:22-46:2). Therefore, this argument fails.

    C.    **Profit for the Second Bid**

Finally, Premier Gaming contends the "Court's reliance upon the Purported Second Bid as part of its finding that no benefit was conferred upon Luna by [Premier Gaming] was further in error because, had Luna submitted the Purported Second Bid and been awarded the Contract, Luna would have completed the Contract at a loss." (Doc. # 75 at 5). Premier Gaming estimates the cost figure per kiosk — based on the contract price using Premier Gaming's information — was $6,654.64. (Id.). And Premier Gaming insists that the contract price that would have been submitted using Curry's alternate cost estimate of approximately $6,000 would have been $6,180. (Id. at 6). Based on this calculation, Premier Gaming insists that Luna would have lost $474.64 per kiosk if Curry's alternate bid was submitted to and chosen by the Army. (Id.).

Again, the Court held that it was not inequitable for Luna to retain any benefit conferred by Premier Gaming for a host of reasons. (Doc. # 70 at 2-5). The profitability of the alternate bid prepared by Curry was not dispositive of the Court's ruling. Even if the profitability of Curry's bid was

9

lower than Premium Gaming's, the result would not have been different.

Furthermore, testimony by Curry at trial supported that Curry's alternate bid would have been profitable. Curry testified that a minimum fifteen percent markup would have been added to the cost estimate he calculated. (Doc. # 68 at 48:18-25). Therefore, the minimum contract price under Curry's alternate bid would have been $6,900, such that Luna would have profited by at least a few hundred dollars per kiosk. Curry further testified that the markup could have been as high as forty percent, which would have resulted in a higher profit. (Id. at 52:17-23). Finally, Curry explained that his cost estimate was already partially inflated because Curry included retail costs for electronics even though he knew he would be able to negotiate lower prices for those items. (Id. at 42:9-15). So, the Court is not convinced that Curry's alternate bid would have failed to produce a profit.

For these reasons, the Court rejects Premier Gaming's argument about the profitability of Curry's alternate bid. Premier Gaming's Motion is denied.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

Plaintiff Premier Gaming Trailers, LLC's Motion for New Trial (Doc. # 75) is **DENIED**.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 30th day of August, 2018.

/s/ Virginia M. Hernandez Covington
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE